AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Southern District of California


FILED
OCT 5 2017
CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )   Case No.
LG Cellular Telephone )
Model No: LGMS210 )                              17MJ3706
S/N: 703CYXM455946, IMEI: 357588-08-455946-0 )

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
See Attachment A-2

located in the ___Southern___ District of ___California___, there is now concealed *(identify the person or describe the property to be seized)*:
See Attachment B-2

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC Section 952, 960, 963 | Importation of controlled substances and conspiracy to import controlled substances (methamphetamine) |

The application is based on these facts:
See Affidavit

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Jeffrey Richardson, HSI Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 10-5-17

_____
*Judge's signature*

City and state: San Diego, CA

Nita L. Stormes, U.S. Magistrate Judge
*Printed name and title*

## **ATTACHMENT A-2**

PROPERTY TO BE SEARCHED

The following property is to be searched:

> CELLULAR TELEPHONE
> LG
> Model No: LGMS210
> S/N: 703CYXM455946
> IMEI: 357588-08-455946-0
> **(Target Device #2)**



currently in the possession of the Department of Homeland Security, Immigration and Customs Enforcement, Homeland Security Investigations which is located at 880 Front Street, Suite 3200, San Diego, CA 92101 (Seized Property Evidence Room).

## **ATTACHMENT B-2**

## ITEMS TO BE SEIZED

Authorization to search **Target Device #2** described in Attachment A-2 includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in **Target Device #2** for evidence described below. The seizure and search of **Target Device #2** shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from **Target Device #2** will be electronic records, communications, and data such as emails, text messages, chats, and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of July 13, 2017 to August 13, 2017:

a. tending to indicate efforts to import methamphetamine, or some other controlled substances from Mexico into the United States;

b. tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of methamphetamine, or some other controlled substances from Mexico into the United States;

c. tending to identify coconspirators, criminal associates, or others involved in importation of methamphetamine, or some other controlled substances from Mexico into the United States;

d. tending to identify travel to or presence at locations involved in the importation of methamphetamine, or some other controlled substances from Mexico into the United States;

e. tending to identify the user of, or persons with control over or access to, the subject telephone; and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which are evidence of violations of Title 21, United States Code, Sections 952, 960, and 963.

## AFFIDAVIT

I, Jeffrey Richardson, being duly sworn, hereby state as follows:

## INTRODUCTION

1. This affidavit supports an application for a warrant to search the following electronic devices (collectively the "**Target Devices**"):

    a.    CELLULAR TELEPHONE
           LG
           Model No:   LGMS330
           S/N:   602CYMR093691
           IMEI: 357885-07-093691-2
           (**Target Device #1**);

    b.    CELLULAR TELEPHONE
           LG
           Model No:   LGMS210
           S/N:   703CYXM455946
           IMEI: 357588-08-455946-0
           (**Target Device #2**)

as described in Attachments A-1 and A-2, and seize evidence of crimes, specifically, violations of Title 21, United States Code, Sections 952, 960, and 963. This search supports an investigation and prosecution of David GOMEZ for the crimes mentioned above. A factual explanation supporting probable cause follows.

2. The **Target Devices** were seized on or about August 13, 2017 from GOMEZ after he was arrested for driving a 2007 Nissan Versa into the United States from Mexico through the Otay Mesa Port of Entry with 4.56 kilograms of methamphetamine hidden in the doors of the Nissan Versa. The **Target Devices** are currently in the possession of the Department of Homeland Security, Immigration and Customs Enforcement, Homeland Security Investigations which is located at 880 Front Street, Suite 3200, San Diego, CA 92101 (Seized Property Evidence Room).

3. Based on the information below, there is probable cause to believe that a search of the **Target Devices** will produce evidence of the aforementioned crimes, as described in Attachments B-1 and B-2.

1

4. The information contained in this affidavit is based upon my experience and training and consultation with other federal, state, and local law enforcement officers and agents, including Customs and Border Protection Officers involved in GOMEZ's arrest. The evidence and information contained herein was developed from my personal investigation of this matter and my review of documents and evidence related to this case, including reports that were prepared by Customs and Border Protection Officers who were working at the Otay Mesa Port of Entry when GOMEZ was arrested and who were involved in GOMEZ's arrest. Because this affidavit is made for the limited purpose of obtaining a search warrant for the **Target Devices**, it does not contain all of the information known by me or other federal agents regarding this investigation. Instead, it contains only those facts necessary to establish probable cause.

## EXPERIENCE AND TRAINING

5. I am an investigative or law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18 of the United States Code, who is empowered by law to conduct investigations of, and to make arrests for, the offenses enumerated in Section 2516 of Title 18 of the United States Code.

6. I am a Special Agent (SA) of the United States Department of Homeland Security, Immigration and Customs Enforcement (ICE), Homeland Security Investigations (HSI) and have been so employed since April 2006. I graduated from a twenty-four week preparatory course at the Federal Law Enforcement Training Center prior to becoming an ICE HSI SA. I have received training in investigating various narcotics-related offenses, including the importation of narcotics and narcotics trafficking. I have also had training in the methods used by controlled substance traffickers to import and distribute drugs and to operate detailed distribution networks. My training has also included the use of cellular and digital telephones and other electronic devices used by narcotics traffickers in the normal course of their illicit activities. Since becoming an ICE HSI SA, I have been involved in over 80 narcotics trafficking investigations involving the importation, distribution and sale of large quantities of controlled substances. I have also worked with

1    other agents with extensive experience in narcotics smuggling investigations.

2    7. Since October 2006, I have been assigned to the Special Agent in Charge San Diego, CA office and as such am cross-designated by the U.S. Drug Enforcement Administration to conduct narcotics investigations and enforce the provisions of the Federal Controlled Substance Act, otherwise known as Title 21 of the United States Code. My current assignment with the Organized Crime Drug Enforcement Task Force (OCDETF), San Diego Strike Force includes investigations related to the illegal importation and trafficking of narcotics. In the course of my duties, I have worked as the case agent, directing specific drug-related investigations; I have worked as a surveillance agent and observed and recorded movements of individuals trafficking in drugs and of those suspected of trafficking in drugs; I have participated in the execution of numerous search warrants; I have initiated and executed arrests for drug-related offenses, including possession with intent to distribute and the importation of controlled substances; and I have interviewed defendants, witnesses and informants relative to the illegal trafficking of controlled substances. Through my observations and these interviews, I have gained a working knowledge and insight into the normal operational habits of narcotics smugglers, with particular emphasis on those who attempt to import narcotics into the United States from Mexico at the San Diego international ports of entry.

8. Based upon my training and experience and consultations with law enforcement officers experienced in drug smuggling and narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I submit the following:

    a. Drug smugglers and traffickers will use cellular/mobile telephones because they are mobile and they have instant access to telephone calls, text, web, and voice messages;

    b. Drug smugglers and traffickers will use cellular/mobile telephones because they are able to actively monitor the progress of their illegal cargo while the conveyance is in transit;

    c. Drug smugglers and traffickers and their coconspirators will use

3

cellular/mobile telephones because they can easily arrange and/or determine what time their illegal cargo will arrive at predetermined locations;

    d.    Drug smugglers and traffickers will use cellular/mobile telephones to direct drivers to synchronize an exact drop off and/or pick up time of their illegal cargo;

    e.    Drug smugglers and traffickers will use cellular/mobile telephones to notify or warn their coconspirators of law enforcement activity to include the presence and posture of marked and unmarked units as well as the operational status of checkpoints and border crossings; and

    f.    Drug smugglers and traffickers and their coconspirators often use cellular/mobile telephones to communicate with load drivers who transport their narcotics and/or drug proceeds.

9. Based upon my training and experience and consultations with law enforcement officers experienced in drug smuggling and trafficking investigations, and all the facts and opinions set forth in this affidavit, I know that cellular/mobile telephones can and often do contain electronic records, phone logs and contacts, voice and text communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular/mobile telephone. Specifically, I know based upon my training, education, and experience investigating drug smuggling and trafficking conspiracies that searches of cellular/mobile telephones yields evidence:

    a.    tending to indicate efforts to import methamphetamine, or some other controlled substances from Mexico into the United States, or possess and/or transport with the intent to distribute methamphetamine or some other controlled substances within the United States;

    b.    tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of methamphetamine, or some other controlled substances from Mexico into the United States, or possession and/or

4

transportation with the intent to distribute methamphetamine or some other controlled substances within the United States;

c. tending to identify coconspirators, criminal associates, or others involved in importation of methamphetamine, or some other controlled substances from Mexico into the United States, or possession and/or transportation with the intent to distribute methamphetamine or some other controlled substances within the United States;

d. tending to identify travel to or presence at locations involved in the importation of methamphetamine, or some other controlled substances from Mexico into the United States, or possession and/or transportation with the intent to distribute methamphetamine or some other controlled substances within the United States, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the subject telephone; and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

10. Based on my training and experience, and conversations with other law enforcement officers who investigate drug smuggling and trafficking, I know that drug conspiracies often require detailed and intricate planning to successfully evade detection. Consequently, drug conspiracies often involve planning and coordination for several months—this planning often occurs through mobile telephones. Additionally, based on my training and experience, and conversations with other law enforcement officers who investigate drug smuggling and trafficking, I know that coconspirators are often unaware when a fellow coconspirator has been arrested and will attempt to communicate with that coconspirator via mobile telephone after his or her arrest to determine the whereabouts of drugs that are being transported.

5

# FACTS SUPPORTING PROBABLE CAUSE

11. On August 13, 2017, at approximately 2:38 a.m., defendant David GOMEZ, a United States citizen, applied for permission to enter into the United States from Mexico through the Otay Mesa, California, Port of Entry in vehicle lane #6. GOMEZ was the driver and sole occupant of a white 2007 Nissan Versa bearing an Arizona license plate (herein referred to as the vehicle).

12. A Customs and Border Protection Officer (CBPO) at the primary inspection booth in vehicle lane #6 received two negative declarations from GOMEZ. GOMEZ stated he was not bringing in anything from Mexico. When asked about the owner of the vehicle, GOMEZ stated "It's mine." The vehicle and GOMEZ were referred to the vehicle secondary lot for further inspection.

13. The vehicle was then taken through the Z-Portal X-Ray machine, revealing anomalies in the doors of the vehicle. The Z-Portal X-Ray machine operator inspected the doors of the vehicle and saw saran wrapped packages.

14. A Customs and Border Protection Canine Enforcement Officer (CEO) conducted a canine inspection of the vehicle with his Narcotics and Human Detector Dog (NHDD) in the secondary inspection lot. The NHDD alerted to a trained odor and indicated to the driver's side rear door of the vehicle.

15. A CBPO conducted a seven-point inspection of the vehicle. The CBPO inspected the doors. The CBPO removed the door panels and discovered saran wrapped packages within the doors. The CBPO cut open each package and discovered a white crystalline substance, which field-tested positive for the presence of methamphetamine. The CBPO removed a total of nine packages of a white crystalline substance from the doors of the vehicle. The total weight of the methamphetamine was approximately 4.56 kilograms (10.05 pounds).

16. GOMEZ was arrested and charged with a violation of Title 21, United States Code, 952 and 960, importation of a controlled substance.

17. My review of the TECS revealed that GOMEZ most recently crossed into the United States from Mexico at the San Luis, AZ Port Entry on August 7, 2017. Additionally, my review of TECS for GOMEZ revealed that since January 1, 2017 GOMEZ only crossed into the United States a total of two times including the date of his arrest on August 13, 2017.

18. Based upon my experience and investigation in this case, there is probable cause to believe that GOMEZ, as well as other persons currently unknown, were involved in an ongoing conspiracy to import and transport methamphetamine. Based on my experience investigating drug smugglers and traffickers, there is probable cause to believe that GOMEZ used the **Target Devices** to coordinate with coconspirators regarding the importation, transportation, and distribution of methamphetamine, and to otherwise further this conspiracy both inside and outside of the United States. There is also probable cause to believe that recent calls made and received, telephone numbers, contact names, electronic mail (e-mail) addresses, appointment dates, text messages, pictures and other digital information are stored in the memory of the **Target Devices**, which may identify other persons involved in drug trafficking activities. Accordingly, based upon my experience and training, consultation with other law enforcement officers experienced in drug trafficking investigations, and all the facts and opinions set forth in this affidavit, there is probable cause to believe that information relevant to the drug smuggling and trafficking activities of David GOMEZ, such as telephone numbers, made and received calls, contact names, electronic mail (e-mail) addresses, appointment dates, messages, pictures and other digital information are stored in the memory of the **Target Devices**.

## METHODOLOGY

19. It is not possible to determine, merely by knowing the cellular/mobile telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular/mobile devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and

7

full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular/mobile service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular/mobile telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular/mobile telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

20. Following the issuance of this warrant, I will collect the **Target Devices** and subject them to HSI's computer forensics group for analysis. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

21. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days, absent further application to this court.

8

## CONCLUSION

22. Based on all of the facts and circumstances described above, there is probable cause to conclude that David GOMEZ used the **Target Devices** to facilitate violations of Title 21, United States Code, Sections 952, 960, and 963.

23. Because the **Target Devices** were promptly seized during the investigation of David GOMEZ's trafficking activities and have been securely stored, there is probable cause to believe that evidence of illegal activities committed by David GOMEZ continues to exist on the **Target Devices**. Based on the above facts and my training and experience, there is probable cause to believe that evidence of violations of Title 21, United States Code, Sections 952, 960 and 963 will be found within the date range of July 13, 2017 to August 13, 2017.

24. WHEREFORE, I request that the court issue a warrant authorizing law enforcement agents and/or other federal and state law enforcement officers to search the items described in Attachments A-1 and A-2, and the seizure of items listed in Attachments B-1 and B-2, using the methodology described above.

I swear the foregoing is true and correct to the best of my knowledge and belief.

Jeffrey Richardson
Special Agent
Homeland Security Investigations

Subscribed and sworn to before me this 5 day of October, 2017.

The Honorable Nita L. Stormes
United States Magistrate Judge

9